**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**SUTASINEE THANA,** *et al.*,</td><td>*</td><td></td></tr>
<tr><td>**Plaintiffs,**</td><td>*</td><td></td></tr>
<tr><td>**v.**</td><td></td><td>**Case No.: PWG-14-3481**</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**BOARD OF LICENSE COMMISSIONERS**<br>  **FOR CHARLES COUNTY,**</td><td>*</td><td></td></tr>
<tr><td>  **MARYLAND,** *et al.*,</td><td>*</td><td></td></tr>
<tr><td>**Defendants.**</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Plaintiffs' liquor license was revoked by a county board of license commissioners after Plaintiffs violated the terms under which the license had been granted. After Plaintiffs unsuccessfully appealed the decision revoking their license to state court, they filed this action in federal district court alleging that the condition that they violated was an unconstitutional restriction on their freedom of speech and seeking preliminary injunctive relief. Because there were significant questions regarding this Court's jurisdiction, the parties were asked to brief that issue prior to consideration of preliminary relief. Defendants seek to dismiss this case on the grounds that it seeks review of a state-court order and therefore is barred by the *Rooker–Feldman* doctrine. Plaintiffs argue that the doctrine does not apply because they seek relief that was not available from the state court. Because I find that all of Plaintiffs' claims either were directly addressed by the state court or are inextricably intertwined with that court's decision, I dismiss this case under the *Rooker–Feldman* doctrine for lack of jurisdiction.

## I.    BACKGROUND

For purposes of considering Defendants' Motion, I accept the facts that Plaintiffs alleged in their Complaint as true.  *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  Plaintiffs Sutasinee Thana and Michael James Lohman are part-owners of Plaintiff Thai Seafood & Grill, Inc. t/a Thai Palace & Thai Palace & Lounge ("Thai"), a restaurant and lounge in Waldorf, Maryland.  Compl. ¶¶ 4–6, 10, ECF No. 1.  Plaintiffs are the holders of a liquor license issued by Defendant Board of License Commissioners for Charles County, Maryland (the "Board"), which is composed of Defendants Pamela Smith, Guy Black, Tomasina Coates, Steven Lowe, and William Young (collectively, the "Commissioner Defendants").  *Id.* ¶¶ 4, 7–8.

The history of Plaintiffs' liquor license dates back at least to 2009, when Plaintiffs first sought a license from the board.  *Id.* ¶ 11.  Following a hearing, the parties arrived at a consent order (the "First Consent Order") on November 12, 2009, *id.*, which allowed the sale of "beer, wine, and whiskey," provided that Thai "will be operated as a family restaurant" between the hours of 11:00 a.m. and 10:00 p.m., and that "there shall be no entertainment other than dinner music from either a radio and/or t.v." without prior approval of the Board, First Consent Order, Compl. Ex. 1, ECF No. 1-3.  It appears that Plaintiffs operated within the parameters of the First Consent Order through 2011, when they requested that the First Consent Order be rescinded to allow Plaintiffs to provide entertainment at Thai.  *See* Compl. ¶ 12.

Following a hearing on December 8, 2011, the parties arrived at a further consent order (the "Second Consent Order") issued on January 12, 2012 that "approve[d] a modification of the [First] Consent Order," allowing Thai to remain open until 2:00 a.m. on Thursday through

Saturday nights and "to offer additional entertainment . . . to include instrumental and acoustical music; Karaoke; [and] DJ music and dancing." *Id.* ¶ 12; Second Consent Order, Compl. Ex. 2, ECF No. 1-4.  As a condition of the grant of a liquor license, the Second Consent Order provided, *inter alia*, that "the licensees shall not allow an outside promoter to maintain control of any entertainment and shall not offer any 'teenager only' events or 'go-go' entertainment." Second Consent Order 2.[1]

Notwithstanding the terms of the Second Consent Order, Plaintiffs "contracted with various 'go-go' bands to perform at Thai" and Thana "authorized the managers of the bands to market, jointly with her, the events through the use of flyers, posters and internet marketing." Compl. ¶ 13.  Plaintiffs allege that "Thana personally approved each piece of marketing material" and "Plaintiffs were joint participants in the marketing of the events." *Id.*  However, many of the posters for events at Thai advertised those events as presented by outside promoters. *See* Event Advertisements 4 (advertisements including the text "through Rock Promotions," "brought to you by [] On Fire Productions/J&J Productions/Kenya White Productions/Smitty Productions/R.E.D. Productions/Swagg Entertainment," and "Swagg Entertainment, Ezzy Does It Promotions & On Fire Productions presents"), 5 ("No Questions Band Ent Presents"), 9 ("Corporate Affairs presents"), Compl. Ex. 3, ECF No. 1-5.

---

[1] According to the Complaint:

> "Go-go" music is a subgenre associated with funk music that originated in Washington, D.C. in the mid1960's to late 1970's.  It remains primarily popular in the area as a uniquely regional music style.  The man considered to be the "Godfather of Go-Go," Chuck Brown, was a resident of Charles County, Maryland, and resided in Waldorf, Maryland until his death in 2012.

Compl. ¶ 9.

Upon learning of these events, the Board issued a show cause order on June 20, 2013, requiring Plaintiffs to appear before the Board and show cause as to why the Second Consent Order should not be revoked.  Compl. ¶ 14; Show Cause Order, Compl. Ex. 4, ECF No. 1-6.  A hearing was held before the Board on December 12, 2013.  Compl. ¶ 15.  Following the hearing, the Board found that Plaintiffs "allowed numerous outside promoters to maintain control of the entertainment at Thai" and "hosted numerous events that included 'go go' entertainment," in violation of the Second Consent Order.  Board Decision and Order 3–4, Compl. Ex. 5, ECF No. 1-7.  Accordingly, the Board revoked both the First and Second Consent Orders as well as the liquor license it had issued to Plaintiffs.  *Id.* at 4.

Plaintiffs sought review of the Board's decision in the Circuit Court for Charles County. Compl. ¶ 16.  On October 15, 2014, in a thorough and thoughtful opinion, the circuit court affirmed the findings of the Board and the revocation of the Second Consent Order,[2] *In re Thana*, No. 08-C-14-000298 (Md. Cir. Ct. P.G. Cnty. Oct. 15, 2014), Compl. Ex. 6, ECF No. 1-8, and found that the Board's factual findings were supported by substantial evidence, *id.* at 5–14. Crucially, the Circuit Court for Charles County expressly considered Plaintiffs' constitutional challenge to the Second Consent Order that "the restriction on go-go entertainment violates the Due Process Clause of the Fourteenth Amendment . . . because the Board has no rational basis to prohibit go-go entertainment while allowing all other forms of musical entertainment," and that

---

[2] Because the circuit court found that "the Board made no findings as to whether [Plaintiffs] violated the terms of [the First] Consent Order," it remanded to the Board for consideration as to whether it was appropriate to revoke Plaintiffs' liquor license *in toto* or whether the First Consent Order should remain in effect.  *In re Thana*, No. 08-C-14-000298, at 24 (Md. Cir. Ct. P.G. Cnty. Oct. 15, 2014).  The record before me does not reflect whether Thai currently is operating under the terms of the First Consent Order, but for the sake of clarity—and because it is apparent that Thai contests the revocation of the Second Consent Order notwithstanding whether the First Consent Order remains in effect—I will refer simply to the "revocation" of Plaintiffs' liquor license even though that revocation was not complete.

the restriction "is unconstitutionally void for vagueness." *Id.* at 14–15.[3]   In rejecting those challenges, the court held that because Plaintiffs entered into the Second Consent Order voluntarily, they "are now barred from raising constitutional challenges to the restrictions to which they consented." *Id.* at 15 (citing *Bd. of Liquor License Comm'rs v. Fells Point Café, Inc.*, 685 A.2d 772 (Md. 1996)).[4]   And in any event, the court found that the restrictions were "reasonable and based on a legitimate purpose" in light of Thai's "long history in Charles County for being a disturbance to the surrounding community" and "a connection between go-go entertainment and promoters and [] criminal activity that occurred at Thai Palace from 2007 to 2008" before the parties entered into the First Consent Order. *Id.* at 18.

Plaintiffs filed their Complaint in this Court on November 5, 2014, before the time to appeal the circuit court's ruling to the Court of Special Appeals had expired. *See* Md. Rule 8-202(a).   Plaintiffs' Complaint set forth a single count alleging that the restriction on go-go entertainment in the Second Consent Order violated Plaintiffs' First Amendment rights to free speech and seeking, in essence, a declaratory judgment finding that the condition—and the revocation of the Second Consent Order based upon its violation—ran afoul of the First

---

[3] Though couched as a due process challenge, this was not significantly different from Plaintiffs' current contention that a restriction on "go-go" entertainment is an unconstitutional condition, *see* Compl. ¶ 19–20, and in any event, a First Amendment challenge to action by a state or municipal actor technically arises under the Due Process Clause, *see Gitlow v. New York*, 268 U.S. 652, 630 (1925).

[4] There was no question that Plaintiffs entered into the Second Consent Order voluntarily and, in fact, they testified before the circuit court that "they understood and agreed to each condition of Consent Order #2." *In re Thana*, No. 08-C-14-000298, at 16 n.4.   It is well-settled that "procedural rights under § 1983, like other federal constitutional and statutory rights, are subject to voluntary waiver." *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 212 (4th Cir. 2007) (citing *Town of Newton v. Rumery*, 480 U.S. 386, 398 (1987)); *see also Lake James Cmty. Fire Dep't, Inc. v. Burke Cnty., N.C.*, 149 F.3d 277, 282 (4th Cir. 1998) (holding that the "unconstitutional conditions" doctrine "does not categorically preclude parties from negotiating contractual relationships that include waivers of constitutional rights").   The mere fact that Plaintiffs now regret the bargain they had entered into does not alter these principles.

Amendment; an injunction preventing the Board from enforcing the restriction or revoking the Second Consent Order or Plaintiffs' liquor license; and an award of monetary damages.  Compl.

At the same time, Plaintiffs also filed a Motion for Temporary Restraining Order ["TRO"], Preliminary Injunction, and Permanent Injunction, ECF No. 2, asking me to enjoin the Board from revoking the Second Consent Order on the grounds that the deprivation of Plaintiffs' right to host go-go entertainment was, itself, an irreparable harm and Plaintiffs were likely to succeed on the merits of their First Amendment claim.  The next day, November 6, 2014, I denied Plaintiffs' motion for a TRO in a Letter Order finding, *inter alia*, that it was far from clear that Plaintiffs were likely to succeed on the merits and noting that this Court might lack jurisdiction altogether under the *Rooker–Feldman* doctrine.  Letter Order, ECF No. 5.  Because Plaintiffs' motion for a preliminary injunction remained pending, I also ordered the parties to schedule a conference call with the Court to determine the best way to proceed expeditiously to consider the issues in this case.  *Id.*

Following a telephone conference call on November 21, 2014 and several letters from the parties, I found that there was a serious question regarding this Court's jurisdiction that would need to be resolved before proceeding to discovery and briefing on the preliminary injunction motion, and I permitted Defendants to file a preliminary motion addressing the issue of subject matter jurisdiction.  Letter Order, ECF No. 15.  Defendants filed their motion, ECF No. 17, and supporting Memorandum, ECF No. 17-1, on January 30, 2015.  Plaintiffs have filed their opposition, ECF No. 20, and Defendants have replied, ECF No. 21.  Having reviewed the filings, I find a hearing is not required.  Loc. R. 105.6.

## II.      STANDARD OF REVIEW

A party may move to dismiss a claim pursuant to Fed. R. Civ. P. 12(b)(1), which provides that a party may assert lack of subject matter jurisdiction by motion as a defense to a claim for relief.  When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based[,] . . . the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration."  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Lutfi v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013); *Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at *4 (D. Md. July 24, 2013).  Thus, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *see In re KBR, Inc., Burn Pit Litig.*, 925 F. Supp. 2d 752, 758 (D. Md. 2013) (quoting *Kerns*, 585 F.3d at 192).  "[W]hen 'jurisdictional facts are inextricably intertwined with those [facts] central to the merits, the [district] court should resolve the relevant factual disputes only after appropriate discovery.'"  *Blitz v. Napolitano*, 700 F.3d 733, 739 (4th Cir. 2012) (quoting *Kerns*, 585 F.3d at 193).  This Court must act "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted).

## III.      DISCUSSION

"[T]he Supreme Court has cautioned that federal courts are bound by a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"  *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 206 (4th Cir. 2006) (quoting *Colo. River Water Conservation Dist. v. United*

*States*, 424 U.S. 800, 817 (1976) (ellipsis in original)).  However, "[t]he jurisdiction possessed by the District Courts is strictly original."  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).  This means that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings.  Review of such judgments may be had only in [the Supreme] Court."  *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).  The doctrine providing that the Supreme Court's "appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate" has become known as the *Rooker–Feldman* doctrine.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'"  *Colo. River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910) (ellipsis in original)).  Although "[c]omity or absention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation," the mere existence of a concurrent state-court action does not deprive a federal district court of jurisdiction.  *Exxon*, 544 U.S. at 282 (internal citation omitted); *cf., e.g.*, *Colo. River*, 424 U.S. at 820 (a federal court may abstain from exercising its jurisdiction in light of parallel state proceedings only where "exceptional circumstances" favor deferring to the state court); *Younger v. Harris*, 401 U.S. 746 (1971) (federal courts ordinarily should abstain from interfering in state criminal proceedings).  But the *Rooker–Feldman* doctrine is distinct from those various abstention doctrines under which "a District Court may decline to exercise or postpone the exercise of its jurisdiction" where properly invoked, *see Allegheny Cnty. v. Frank*

*Mashuda Co.*, 360 U.S. 185, 188 (1959); it is not a matter of discretion, *cf. VonRosenberg v.*

*Lawrence*, ---- F.3d ----, 2015 WL 1431642, at *2 (4th Cir. March 31, 2015) (applying abuse of

discretion standard to district court's abstention under *Colorado River*).   To the contrary,

*Rooker–Feldman* simply "does not authorize district courts to exercise appellate jurisdiction over

state-court judgments" at all.  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644

n.3 (2002).

      However, in recent years both the Supreme Court and the Fourth Circuit have clarified

that the doctrine is quite narrow and applies only to

> cases brought by state-court losers complaining of injuries caused by state-court
> judgments rendered before the district court proceedings commenced and inviting
> district court review and rejection of those judgments.  *Rooker–Feldman* does not
> otherwise override or supplant preclusion doctrine or augment the circumscribed
> doctrines that allow federal courts to stay or dismiss proceedings in deference to
> state-court actions.

*Exxon*, 544 U.S. at 284; *see also Davani v. Va. Dep't of Transp.*, 434 F.3d 712, (4th Cir. 2006).

More recently, in *Skinner v. Switzer*, the Supreme Court narrowed the doctrine further, holding

that even though "a state-court decision is not reviewable by lower federal courts, [] a statute or

rule governing the decision may be challenged in federal action."  131 S. Ct. 1289, 1298 (2011).

The Fourth Circuit has noted that the *Rooker–Feldman* doctrine is "rarely relied upon in the

federal courts."  *Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, 521 F. App'x 278 (4th Cir.

2013).

      In the wake of *Exxon* and its progeny, it is apparent that *Rooker–Feldman* remains alive,

if narrow, but its contours have become difficult to trace as the doctrine has become more closely

circumscribed.  The principal post-*Exxon* case in this circuit is *Davani v. Virginia Department of*

*Transportation*, in which the plaintiff, after being fired from a government job, administratively

grieved his termination and, after the termination was upheld, unsuccessfully appealed the ruling

to a Virginia state court.  434 F.3d at 713.  When the plaintiff subsequently filed a discrimination

complaint against his former employer in federal district court, the case was dismissed under the

*Rooker–Feldman* doctrine.  *Id.*  The Fourth Circuit reversed on the grounds that the federal case

did "not challenge the state [] court's decision itself, but rather [sought] redress for Appellees[']

alleged discrimination and retaliation."  *Id.* at 716.  It further explained that, "*Exxon* requires us

to examine whether the state-court loser who files suit in federal district court seeks redress for

an injury caused by the state-court decision itself.  If he is not challenging the state-court

decision, the *Rooker–Feldman* doctrine does not apply."  *Id.* at 718 (internal footnote and

citations omitted).  In contrast, if the harm resulted from a state-court judgment itself, the

"doctrine applies . . . even if the state-court loser did not argue to the state court the basis of

recovery that he asserts in the federal district court."  *Id.* at 719.

        In several other cases, the Fourth Circuit has shed light on the contours of the doctrine.

In *Elyazidi v. SunTrust Bank*, a party who had been subject to a debt collection judgment in state

court filed a federal lawsuit against the collecting bank alleging that the bank violated the Fair

Debt Collection Practices Act ("FDCPA") by seeking, in its initial pleading in state court,

attorneys' fees that had not yet been earned.  780 F.3d 227, 232–33 (4th Cir. 2015).  The court

held that alleging fraud in the bank's initial pleading did not seek to upset the state court's final

determination as to what fees actually were owed, and therefore that the *Rooker–Feldman*

doctrine did not apply.  *Id.* at 233.  In *Adkins v. Rumsfeld*, the Fourth Circuit considered a

challenge to a statute under which the retirement pay of divorced former servicemembers could

be sent directly to former spouses as a mechanism to enforce the terms of divorce decrees.  464

F.3d 456, 461–63 (4th Cir. 2006).  The court held that the federal suit did not seek to "'reverse or

modify' the state court decree," and that even though a ruling in the plaintiffs' favor would

prevent direct payments from the Armed Forces, it would not release them from the terms of their divorce decrees, which would remain in effect. *Id.* at 464. Accordingly, *Rooker–Feldman* did not deprive the district court of jurisdiction. *Id.*

And yet, the Fourth Circuit also has made clear that, even in its narrowed form, *Rooker–Feldman* retains its vitality. In *Smalley v. Shapiro & Burson, LLP*, after a law firm that had handled several foreclosures was discovered to have engaged in improper practices and relied upon fraudulent documents, several individuals whose homes had been foreclosed upon brought a federal case raising, *inter alia*, claims under the FDCPA and challenges to the fees awarded in the foreclosures. 526 F. App'x 231, 234–35 (4th Cir. 2013). The court held that this was, in essence, an attack on the portion of the state-court judgments affirming the legal fees, and therefore that there was no federal jurisdiction under the *Rooker–Feldman* doctrine. *Id.* at 236–37. Notably, the Fourth Circuit observed that *Rooker–Feldman* acts to bar claims that are "'inextricably intertwined'" with a state court judgment because even "[i]f Appellants are not seeking a review of the state court's judgment, their success on the merits would necessitate a finding that the state court 'wrongly decided the issues before it.'" *Id.* at 236 (citations omitted). And in a case alleging "'numerous due process violations . . . at the hands of various county Board[]s and agencies, and their attorneys and staff' during 'the county's administrative review process,'" the court held that "the lower federal courts lack jurisdiction to sit as appellate tribunals over state administrative and judicial decisionmakers, absent explicit statutory authorization." *Rosseau v. Howard Cnty., Md.*, 425 F. App'x 193, 194–95 (4th Cir. 2011) (ellipsis and emendation in original) (citations omitted).

Through careful reading of the *Rooker–Feldman* case law, it is possible to synthesize some key principles. First, as the Fourth Circuit expressly has stated, a claim only will fall

within the scope of the doctrine if it alleges a harm actually worked by a state-court judgment.  If the harm existed prior to the state-court action, a federal district court may exercise jurisdiction even if a contrary ruling by a federal court could create inconsistent state and federal rulings—this danger is avoided by traditional preclusion doctrines.  And a case that merely touches on a state-court judgment, such as by attacking the means of enforcing it, as in *Switzer*, or the underlying statute, as in *Adkins*, does not fall within the doctrine if it does not seek review of the judgment itself or the state-court's application of the allegedly invalid statute.  Nonetheless, *Rooker–Feldman* appears to apply even to administrative proceedings that are amenable to judicial review, *see Rosseau*, 425 F. App'x at 195, and may encompass even minor aspects of a state court ruling so long as it would require a federal court to determine error in a state court ruling, *see Smalley*, 526 F. App'x at 236.  With these principles in hand, it is possible now to turn to the specific claims raised by Plaintiffs.

As a threshold matter, it readily is apparent that Plaintiffs are "state-court losers" subject to an unfavorable ruling in state court.  *See In re Thana*, No. 08-C-14-000298.  The only question truly before me is whether they seek to redress "an injury caused by the state-court decision itself." *Davani*, 434 F.3d at 719.  "A claim seeking redress for an injury caused by the state-court decision itself—even if the basis of the claim was not asserted to the state court—asks the federal district court to conduct an appellate review of the state-court decision." *Id.*

The substantive relief sought by Plaintiffs falls into three broad categories:  First, Plaintiffs seek what, in essence, is an invalidation of the revocation of their liquor license.  *See* Compl. ¶¶ B (seeking declaratory judgment that revocation of Second Consent Order violated Plaintiffs' First Amendment Rights), C (seeking injunction against enforcing provisions of Second Consent Order), D (seeking injunction against revocation of Second Consent Order), E

(seeking injunction against revocation of liquor license).   Given the fact that the circuit court's opinion and order specifically addressed the substance of the very constitutional challenge that Plaintiffs seek to raise before me and concluded, citing authority from the Court of Appeals of Maryland, that Plaintiffs had waived the rights they now seek to enforce by voluntarily agreeing to the terms of the Second Consent Order, it is difficult not to conclude that—even under the narrowest application of the *Rooker–Feldman* doctrine—this case falls neatly within the bounds of the doctrine insofar as it plainly seeks to attribute error to the core of the Board's order and the circuit court ruling affirming it (and thereby, to overturn them).   *See* Board Decision & Order 3 (revoking Second Consent Order and liquor license); *In re Thana*, No. 08-C-14-000298, at 25. Accordingly, this Court lacks jurisdiction whether Plaintiff's complaint is construed as a challenge to the decision of the circuit court or of the Board itself.   *Rosseau v. Howard Cnty., Md.*, 425 F. App'x 193, 195 (4th Cir. 2011).

Second, Plaintiffs seek a declaratory judgment that the restriction against "go-go" entertainment was, when imposed, an invalid restriction of their First Amendment Rights.   *Id.* ¶ A.   As Defendants observe, the Second Consent Order has been revoked and, therefore, a claim seeking a declaratory judgment as to its constitutionality likely is moot.   *See* Defs.' Mem. 18. But even were the Second Consent Order still in effect, the state court already considered and rejected the possibility that the restriction on "go-go" dancing was unconstitutional when initially imposed when it affirmed the ruling of the Board.   *In re Thana*, No. 08-C-14-000298, at 14–18. I could not possibly rule in Plaintiffs' favor on these claims without finding error by the state court.   Accordingly, the validity of the Second Consent Order is "inextricably intertwined" with the rulings revoking Plaintiffs' liquor license and Plaintiffs' "success on the merits would necessitate a finding that the state court 'wrongly decided the issues before it.'"   *Smalley*, 526 F.

App'x at 236. Further, Plaintiffs' claim that this case is about the imposition of an allegedly unconstitutional condition in 2012 is belied by the fact that Plaintiffs did not appear to object to the terms of the Second Consent Order (and, in fact, affirmatively consented to them) until after the revocation of their liquor license in 2014.

And in fact, a challenge to the terms of the Second Consent Order is an appeal of a decision of an administrative agency in any event, which expressly is foreclosed by *Rosseau*, 425 F. App'x at 195. As in *Rosseau*, Plaintiffs already had a procedure at their disposal to contest the Second Consent Order when it was issued in 2012, although they may have missed their opportunity to use it. *See* Md. Code Ann., Art. 2B, § 16-101(a) (allowing for appeal of a "decision of a local licensing board in approving, suspending, revoking and restricting . . . a license, or a licensee" to a circuit court). *But see* Md. Rule 7-203 ("a petition for judicial review shall be filed within 30 days after" the date of the action sought to be reviewed).[5]

Finally, Plaintiffs seek $500,000 in unspecified monetary damages, *id.* ¶ G, which they argue—without citing case law in their favor—allows them to escape *Rooker–Feldman* because "[c]ompensatory damages cannot be awarded in the other case." Pls.' Opp'n 8. Though far from

---

[5] Accordingly, even if *Rooker–Feldman* did not apply and Plaintiffs' claims were not governed by traditional preclusion doctrines as both parties acknowledge they may be, *see* Defs.' Mem. 19, the statute of limitations would remain a significant barrier to Plaintiffs' claims arising out of the Board's actions in 2012. *See Wormwood v. Batching Sys., Inc.*, 723 A.2d 568, 573 (Md. 1999) (time period under Rule 7-203 "is in the nature of a statute of limitations"). Though Plaintiffs argue that their constitutional claim falls within the three-year limitations period for civil actions, *see* Pls.' Opp'n 2 & n.1 (citing Md. Code Ann., Cts. & Jud. Proc. § 5-101), because Plaintiffs willingly entered into the Second Consent Order in order to secure a liquor license and did not challenge its terms until after they were caught violating them and had their license revoked, they still would need to avoid dismissal on equitable grounds such as laches, *see, e.g.*, *AC & R Insulation Co., Inc. v. Penn. Mfrs.' Ass'n Ins. Co.*, 993 F. Supp. 2d 539, 548–49 (D. Md. 2014), or estoppel, *see Knill v. Knill*, 510 A.2d 546, 534 (Md. 1986). Of course, none of these potential barriers to Plaintiffs' recovery properly is before me on this preliminary motion to dismiss for lack of subject-matter jurisdiction, but neither has any of these defenses been waived where, as here, Defendants have not yet responded to the complaint. *See* Fed. R. Civ. P. 8(c).

clear in their Complaint, Plaintiffs' Opposition asserts that they do not seek damages arising out of the revocation of their liquor license, but rather for the very imposition of the restriction on "go-go" entertainment in the first place.  *Id.* at 2.  No doubt, this is because *Rooker–Feldman* clearly prevents Plaintiffs from obtaining monetary damages for the revocation of their liquor license where I could not consider the validity of that revocation.

It also is far from clear that Plaintiffs suffered any harm at all from the entry of the Second Consent Order in 2012.  The complaint clearly reflects that Plaintiffs held "go-go" events notwithstanding the restrictions in the Second Consent Order, *see* Event Advertisements, and Plaintiffs do not allege any way in which they altered their conduct as a result of the Second Consent Order.  *See* Compl.  To the contrary, Plaintiffs expressly allege that even after the Second Consent Order, they "exercised their First Amendment right of free speech by promoting and/or offering 'go-go' music and/or entertainment in their establishment."  *Id.* ¶ 1.  Although government action that chills speech may effect a cognizable harm, *see, e.g.*, *Laird v. Tatum*, 408 U.S. 1, 11 (1972), it is not clear to me that Plaintiffs have suffered any harm at all where, as here, their speech continued unabated until the time that their liquor license was revoked.

But even if the very existence of the Second Consent Order harmed Plaintiffs in ways that they have failed to allege, they cannot bring a federal claim for monetary damages for the same reason that they cannot seek declaratory judgment: Both claims seek to undermine the revocation of Plaintiffs' liquor license.  And though I am aware of at least one instance in which this Court has allowed plaintiffs to proceed with (though not to prevail on) constitutional claims arising out of the alleged improper suspension of a liquor license, *see Orgain v. City of Salisbury*, 521 F. Supp. 2d 465 (D. Md. 2007), the plaintiffs in *Orgain* surrendered their liquor license and elected to pursue damages in a § 1983 suit *instead* of seeking to appeal the board's

order, *id.* at 475.  And in any event, the crux of the plaintiffs' claims in *Orgain* was a pattern of alleged discriminatory law enforcement that culminated in the suspension of their license.  *Id.* at 474–75; *see also Davani*, 434 F.3d at 715 (allowing federal case to proceed when premised on alleged discrimination that preceded a state administrative ruling).  Because the only harms that Plaintiffs can allege arise out of the decision of the Board itself, I cannot see how simply adding a new type of damages allows Plaintiffs to obtain review of that decision where they otherwise could not.  *See id.* at 719 (*Rooker–Feldman* covers even claims that were "not asserted to the state court").

Because I find that this Court lacks jurisdiction under *Rooker–Feldman*, I need not consider Defendants' arguments for abstention.

## IV.   CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss will be GRANTED, and this case will be DISMISSED.

A separate order will issue.

Dated: May 14, 2015             _____/S/_____

                                                 Paul W. Grimm
                                                 United States District Judge

dsy